### SCHEUER v. KATZOFF (two cases).

#### (District Court E. D. New York. May 5, 1916.)

**1. BANKRUPTCY ⚖⇒164—VOIDABLE PREFERENCES.**

Payments by a bankrupt to relatives within four months prior to his bankruptcy *held* to have been made while he was insolvent, with intent to give preferences, and with knowledge of such facts on the part of the persons paid as to constitute voidable preferences.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 267; Dec. Dig. ⚖⇒164.]

**2. BANKRUPTCY ⚖⇒166(1)—FRAUDULENT PREFERENCES.**

The knowledge of a creditor that payment to him is out of fund which, if the debtor became bankrupt, would be needed equally by other creditors, renders the transfer to him voidable, under Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (Comp. St. 1913, § 9644), where bankruptcy intervenes within four months.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250, 251; Dec. Dig. ⚖⇒166(1).]

In Equity. Suits by Jonas Scheuer, trustee in bankruptcy of David Weiss, against "Rebecca" Katzoff (real first name unknown) and against Rudolph Katzoff. Decrees for complainant.

Goldman, Heide & Unger, of New York City, for plaintiff.

Henry W. Fried, of New York City, for defendants.

CHATFIELD, District Judge. The plaintiff in each action is the trustee in bankruptcy. In the first action he seeks to recover certain payments made upon the 5th, 8th, and 9th of October, to the defend-

ant Rebecca Katzoff, aggregating the sum of $900. Rebecca Katzoff is the mother-in-law of the bankrupt, David Weiss, against whom a petition was filed in the Southern district of New York, upon the 17th day of October, 1914, following the making of an assignment by the bankrupt upon the 14th day of October, 1914. This assignment was the direct consequence of a creditors' meeting called for that day, at which the bankrupt offered 10 per cent. in cash and 25 per cent. in notes to his creditors, stating to them that some of his brothers-in-law, who are involved in these transactions, would indorse his notes.

It also appears that the bankrupt had (at least two days prior to the 10th of October, when notices of this meeting were sent out) retained an attorney, paying him $200, which he had borrowed from his brother-in-law Rudolph Katzoff, who is the defendant in the other action. In this second action the trustee in bankruptcy seeks to obtain the return of $800 paid upon October 5th and October 9th to Rudolph Katzoff, being the balance of a debt of $1,000 upon which $200 had been paid in September. It appears from the testimony that Rudolph Katzoff borrowed $1,000, giving his savings bank account as collateral, in order to loan this money to the bankrupt, and that when his note became due in July, 1914, he (Rudolph Katzoff) had to take up the note and thereafter demanded payment from time to time from the bankrupt.

On October 3d, the bankrupt secured from another brother-in-law the sum of $1,200 by pledging or selling his business accounts. He continued his business until the creditors' meeting, and his books show the payment of $13.29 to merchandise creditors between the 5th and the 9th of October, while he paid $2,008.90 to himself and his brothers-in-law and his mother-in-law. On October 3d, the day upon which he deposited the check of $1,200 from his brother-in-law, two checks seem to have been used from his check book, and on the stubs of these checks is entered the amount of a check given to the defendant Rudolph Katzoff for $700, dated October 5, 1914, and a check to the order of I. Shapiro, another brother-in-law, also dated October 5, 1914. These two checks were made by the bankrupt, instead of by his bookkeeper, and are upon so-called "counter check" blanks. The absence of the original checks is not explained.

On October 5th the bankrupt also paid to another brother-in-law the sum of $450 by his own check, and transferred to his mother-in-law the checks received from two customers, one for $304.20 and one for $60.68 (this last being that of the same person who received the $450 payment). On October 8th the bankrupt paid to his mother-in-law, one of the defendants herein, a check for $400, which he had received from another customer, and on the 9th paid to her the balance of her $900, amounting to $135.12. This was a part of the money received from another customer, and out of the same sum the bankrupt also paid, on October 9th, $100 to the defendant Rudolph Katzoff, and the balance to another brother-in-law upon the same day.

An examination of the books (starting with the value of the stock fixed in the bankrupt's schedules) shows that the bankrupt was insolvent at all these times. As a matter of fact the value placed upon the stock by the bankrupt in his schedules is $9,500, while the value

presented to his creditors at the meeting at which he offered 10 cents cash on the dollar was $5,500, and the amount realized upon the auction sale (as well as the appraisal) was less than $2,000.

The defendant Rebecca Katzoff loaned the $900 to her son-in-law, the bankrupt, in March, 1914, and testifies that during the summer of that year she was at Sharon Springs. From time to time during the summer she needed money, but was unable to obtain it from the bankrupt, and it was advanced by her son, Rudolph Katzoff, who thus gave her $500 up to October, and the balance, $400, after the receipt of these moneys from the bankrupt. She had no dealings with the bankrupt in October, 1914, except through her son, Rudolph Katzoff, who made the demands for her.

The bankrupt testifies that he was compelled to make these payments because of the demands of Rudolph Katzoff on behalf of his mother and on his own account. Rudolph Katzoff testifies that he made no difference in demanding the amount due upon both accounts, and substantially indicates that he had taken over his mother's claim against the bankrupt to the extent of the amount which he had advanced to his mother.

But whether Rudolph Katzoff demanded payment as assignee, or whether he demanded payment simply as agent for his mother, with the idea of holding the amount which he might receive to reimburse himself, does not alter the situation in this case. The bankrupt and Rudolph Katzoff apparently carefully kept account of the amounts which were paid upon each claim, and the items were entered in the bankrupt's books by his bookkeeper, and at his direction, as paid on account of his mother's loan and of Rudolph Katzoff's loan, respectively, instead of applying the payments of October 5th entirely to one loan and the later payments to the other.

The defendant Rebecca Katzoff was therefore bound by the actions of her agent in so far as the circumstances under which the money was collected are concerned. Knowledge of the condition of the bankrupt's finances and of the likelihood of possible avoidance of any preferential payment would depend upon the knowledge which Rudolph Katzoff had at the time when he demanded and received the payments both for himself and as his mother's agent.

[1] There is no question that the bankrupt was insolvent throughout the entire period. There is no question that the payment to these creditors was preferential, and that the bankrupt knew it to be so, and therefore in that sense intended to pay them in preference to the other creditors, and the payments were within four months of bankruptcy. Upon the testimony it must also be held that Rudolph Katzoff had reasonable ground to know that he was compelling payment of a claim which could only be paid with funds that were not being used for the payment of other debts of equal rank.

[2] Under such circumstances, if bankruptcy intervenes within four months, the creditor runs the risk of the avoidance of a payment of this nature by the trustee. The knowledge which a creditor has that his payment is out of funds which (if liquidation were had) would be needed equally by other creditors brings him within the language of the statute making a transfer voidable (section 60, subd. "b")—

"if a bankrupt shall have given a preference, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference." Act July 1, 1898, c. 541, 30 Stat. 562 (Comp. St. 1913, § 9644).

But, further than this, the facts in this case indicate to the entire satisfaction of the court that the borrowing of money from one brother-in-law (by the transfer of accounts) and the payment of this money to the other members of the family, when viewed from the precise way in which the items were transferred and the whole matter conducted, were parts of a deliberate plan, in which the various parties were all concerned, to protect the members of the family and to distribute the assets of the bankrupt in such a way that they would be in a position to help him in offering a composition to his creditors. The defendant Rudolph Katzoff was apparently careful not to know exactly what the others were doing, but it is plain from the testimony that he had knowledge that something of the sort was being done, and that he was a party to the transaction.

The plaintiff may have a decree in each case.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes